S. P. E. A. K. M. A. N. And I represent the defendant, Anthony, Kevin Cardwell, in this matter. In the briefs, we briefed a number of issues, but during the course of the argument this morning, unless the court has questions regarding some of the other issues, I'd like to focus on issues two and three, the issue of whether or not Mr. Cardwell was proven guilty beyond a reasonable doubt, and the issue of whether or not the court erred in failing to grant the motion for new trial. Just very briefly, the facts of this case, as I think both briefs laid them out, this is an allegation in which a 13-year-old girl alleged that her father showed her a pornographic movie and exposed his penis. Those allegations were vehemently denied in testimony by the father, and after the hearing was concluded, and this was, as you probably recall from the briefs, a bench trial, the judge found, and this is one of the things I, the language in his finding was, he found that the minor and the mother were more credible than the father. That language does not sound like reasonable doubt language. That sounds like civil law language, more credible. Never, in my review of the record, does he say he found the father completely incredible or not believable. He just thought the daughter, and particularly since her mother was also testifying consistently, was more believable. And that more believable language, it's our position, and counsel argued this in the motion for new trial, that that was just simply insufficient to say that the defendant had been found guilty beyond a reasonable doubt. When you look at the evidence and the story that was told by the minor, it's bizarre, and it strains credulity. She has this story of these things, and this happens, and I'm over at the house that my dad lives at, and it's not his girlfriend's house, it's someone else's house, and he just happens to have a, that other person has kids in the family on top of the TV that he just happens to throw in and show me. And the minor takes a considerable amount of time. It's unclear from the record whether it's two weeks or a month, but it's a while before there's any report made to anyone in authority. Eventually there's a report, and let's keep in mind, again, from the record, that at the time that the allegation is made, mom and dad are in a divorce situation, and at this time the minor is living with mom and mom's boyfriend, the parties aren't divorced, dad has a new girlfriend, there's all these things going on. There's some testimony from the minor's grandmother on behalf of the defense that she tends to exaggerate and may tend to make stories up. So in all of this, and then what we have is a judge's decision where the judge says, I think it's more credible what they said. And again, that's just not, the evidence as it was presented was just not sufficient to show that Mr. Cardwell was guilty beyond a reasonable doubt. And again, picking up on what the trial counsel argued initially in a motion for a directive finding, even, even if you assume for purposes of argument that everything that the minor explained was true, there was no evidence presented, there was no evidence that the minor even testified to that any of this showing, again, even if you find it believable, was done for sexual gratification. Now, I understand in the State's position as well, you could show that by circumstantial evidence because of the showing of the video. But I would submit, and it's defense counsel here, that there's just not enough. That's not enough. Particularly when you take into account, even from the minor's perspective, that part of this was dad trying to explain certain things to her based on a request by his mother because there was some indication that the minor had begun to experiment in a same-sex relationship with another girl. This is not a typical, I don't know if there's a typical case, this is not a case where dad says, okay, you're not a lesbian and I'm going to show you why you're not a lesbian. There's none of that. In fact, the minor says he wasn't drinking and he didn't ever ask me to touch his penis. He didn't do anything like that. He just said, have I ever, you know, according to her, have you ever seen a penis here? Let bizarre story and one which the defendant in his testimony said absolutely didn't happen. These cases often are just that. One party says this happened and another party says it didn't happen and the trial court, you know, weighs their credibility. And unless we see it as absolutely so unreasonable that no reasonable person could find that this happened, we affirm the trial court. And I guess you're not pointing me in the direction of her story being preposterous, that no way could this happen. Well, I think there are a number of things about the story that strain the imagination. One is that she says she was upset, yet she didn't report. And here two weeks to a month is so long. I mean, certainly case law indicates that that is not a considerably long time. And that's true. But I think, and here now we kind of segue into the issue of the newly discovered evidence and the motion for a new trial based on the newly discovered evidence, which is the newly discovered evidence was the sister of the minor. And the minor testified that in fact, and she did testify in the trial, that she immediately, when her sister came over the next day, she told her sister that this was going on and that her sister didn't believe her. Now the sister's testimony at the motion for a new trial, because she testified in person, was subject to cross-examination, and her testimony was, she never said anything to me. She said, you know, Dad had a sex talk with her, and she was kind of, these are the words of the older sister, she was kind of giggly about it, you know, a little uncomfortable as I would expect, you know, as I would have been if we had some kind of sex talk, my dad and I, but she never told me that he'd done anything bad. We had a, you know, we had a good day. If it's your first sex talk with your father, how would she know that every father doesn't have a sex talk with his daughter in this fashion? That's a good question. I don't know that she would. And again, even if you assume, you know, assume things were exactly as the complainant testified to. There's no, based on her testimony, there's just no allegation that this was for sexual gratification of Dad. Well, the pornographic film, if the court believed it was being played, it would suggest that the exposure coupled with the pornographic film was enough to prove sexual gratification and intent to sexually gratify himself. He didn't have a set of encyclopedias open. That's true. And again, obviously without conceding that any of it's true, that he didn't have encyclopedias, but of course in this day and age, most people don't. And in fact, I would submit based on other cases that I've dealt with over the years that I'm sure you all have seen, it's probably safer to show a pornographic DVD than it is to get on the Internet and try to find anything that has to do with pornography. But as a side, I mean, if you believe that that's what it was, that it was a sex talk using pornographic video, while it might be ill-advised, again, there's no testimony that he was doing it to gratify himself. And I think in the context of the conversation as presented by the minor, the whole motivation was explanation, not sexual gratification. And the testimony, you know, yes, according to her, he says, oh, aren't these girls pretty in the video and these types of things. You know, but again, it just, again, even assuming what she says is true, without conceding it, there's still that, the more, although again, an ill-advised technical demonstration, if you will, still no, nothing that she says, you know, yeah, he was, you know, she says masturbating, but again, there's just not that nexus of sexual gratification required for the statute. Isn't there, I mean, the court's allowed to draw an inference of sexual gratification. I mean, there's no need for evidence of ejaculation or anything. I mean, I guess I'm going to ask you, what do you think that the state needed to prove? I think that the state, and again, this was a trial defense counsel's argument initially as well, that there had to be, the purpose of the act is sexual gratification, and even if you believe the complainant, as she testified, the purpose of what the father did in this case was not his sexual gratification. It was not her sexual gratification. It was a poor attempt to explain the biology. Which he did not dispute. He testified he did have a sex drive. Yes, he did. So that's not in dispute. What is in dispute is what was his intention. And the level, the other thing that's in dispute is the level of the sex talk. Because in his testimony, he said he did not show her pornographic video. He did not masturbate. He did not take out his penis and expose himself. She says he did. And she described the way his penis looked as shiny. Right, which is all the explanation there was. Again, as to the... Would you agree that arousal alone is sufficient to show intent for sexual gratification on the part of the person exposing him or herself? I would not. I would not agree with that point. Particularly, I mean, if you do research on sexual assault, there are times where a sexual assault victim may be aroused despite the fact that they're being assaulted. Particularly with a male erection. They're not necessarily connected in the technical sense. It doesn't mean necessarily, I want to be sexually gratified. But there are physiological things sometimes that occur. But I've got about a minute. I want to just get briefly back to the fact that the sister could have put more of the puzzle pieces in place. She was there right after. She said the minor never made any indication to her that anything of this nature, pornographic video, dad exposing himself, that none of this had ever happened. And that that evidence was not able to be disclosed. It was not able to be found by trial and defense counsel because, as she testified, the minor was afraid of what her mother would do if she didn't get her story straight and support her sister. And I think that's really the salient point, that taking that newly discovered evidence with the story as it came out. I think the newly discovered evidence did meet the criteria for newly discovered evidence and should have been admitted in a new trial. She should have been allowed. Thank you. Thank you, counsel. Ms. DeMichel, you may respond. Thank you. May it please the court. Counsel, Laura DeMichel on behalf of the people in this case. Because the defendant has just argued the two issues in this case, the people will rest on their brief for the arguments as to the other issues as well. Regarding defendant not being proven guilty beyond a reasonable doubt of sexual exploitation of a child, first it's important to keep in mind the standard of review. The standard of review looks as to whether any rational or prior fact, viewing the evidence in the light most favorable to the people, could have found the defendant guilty beyond a reasonable doubt. That means it's not a question of whether or not we believe J.C., the victim in this case, for the purposes of appeal, we take her testimony as true because we're viewing the evidence in the light most favorable to the people. And looking at that evidence, it was clearly sufficient to show sexual gratification. It's not just a sex talk gone wrong. Here's what the evidence showed through the testimony of J.C. Defendant began by asking J.C. about her dating life. He said teenagers like to experiment. That's okay. He told her he could get weed or sex toys for her. Then he got out a pornographic magazine, was showing her the pictures in it while saying the female body is beautiful, told her he wanted to show her something else, retrieved a pornographic DVD from on top of the television, told her she could try some of the things in the DVD that she was about to see. While the DVD was playing, defendant asked his 13-year-old daughter, J.C., if she'd ever seen a penis. Then he took out his penis and masturbated. He didn't just expose it and try and show an anatomy lesson. He actually masturbated. Specifically, J.C.'s testimony was that he masturbated. She said that he was rubbing and squeezing his penis, that he was making an up and down motion, and that it looked shiny and that it looked like wet skin. This evidence was clearly sufficient to prove sexual gratification. There's no restrictive legal definition of the term and a reasonable inference from all that testimony is that his acts were for the purposes of sexual gratification. And furthermore, the statute prohibits acts that are for the purpose of sexual arousal or gratification. So sexual arousal is even sufficient under the statute. However, here we have both arousal and gratification purposes. Regarding the defendant's motion for a new trial based on newly discovered evidence, the allegedly newly discovered evidence is testimony by J.C.'s sister, N.C. However, as the trial judge found, there's three elements that must be met in order for a new trial based on newly discovered evidence to be warranted, and none of those elements were present in this case. If even one isn't present, a new trial is not warranted. But here, first the evidence was not of such conclusive character that it would likely change the results on retrial. Under Waters, a new trial is not warranted if testimony serves merely to impeach. Here all we have is a statement by N.C. that J.C. didn't tell her what J.C. told her she told her. And that just wouldn't make such a conclusive difference that the results on retrial would be different. Furthermore, it was a bench trial, so when we have the finder of fact saying that it wouldn't have changed, it wouldn't make a difference on retrial, that finding is coming from the finder of fact who had viewed all the evidence originally. Second, the evidence was merely cumulative. Defendant had already tried to impeach J.C. He had thoroughly cross-examined her, also presented his own testimony and testimony of his mother. Additional impeachment then was merely cumulative. And third, the evidence could have been discovered prior to trial. N.C. was J.C.'s sister. Everyone knew N.C. lived with and talked to J.C. Defense counsel had even subpoenaed N.C. to appear the day of the trial. She did, and she talked with defense counsel. And there's no reason that if counsel had asked N.C. about her version of events, she couldn't have said at that point, no, J.C. didn't tell me that. So because none of the three elements for a new trial based on newly discovered evidence were met, the judge clearly did not abuse his discretion when he denied that motion. Is there enough for the questions? The people who rest on the items remain in their briefs for issues one and four. I don't believe there are. Thank you, counsel. Thank you, Your Honors. Ms. Speakman, you may reply. Thank you. And this will be very brief. Again, I think that although counsel must know the statute talks about for the purpose of arousal, although this may appear to be mere wordsmithing, I think, again, we go back to the purpose was not arousal or gratification. The purpose was the sexual education, if you will. And second, as to N.C.'s testimony, it was more than mere impeachment. She was the closest thing to an occurrence witness that was available. She had some things that she could have added. It's also important to note her fear of her mother and the things that she said along the lines of I was afraid Mom might do this. She kept telling me to support my sister, to stick with the story. And whether or not it was available to defense counsel, I believe the testimony was that when asked by defense counsel, N.C. said she was just going to stay neutral. She didn't want to take sides. Interestingly enough, within her testimony is contained a question on cross-examination by the state, where the state says, well, you didn't talk to any adult until after your dad was convicted, did you? And she said, no, I did. I talked to my counselor at school, and my counselor at school told me just to wait it out. So here, she's not a 20-year-old. She's still living in the house with her mother. She's 16 years old at the time of the trial. And she's talked to the only adult that she knows who to talk to, who's impartial, who's told her to wait. So, again, I would submit that we did, that all three elements were. It wasn't mere impeachment. It clearly was not cumulative. And I truly believe, based on the testimony, you have the opportunity to review the transcript and see N.C.'s full testimony, that she was fearful and that she did talk to an adult and did what the only impartial adult involved told her, which was just wait and see how it turns out. So, based on that, unless the court has any further questions, I have nothing further. I don't believe we do. Thank you, counsel. Thank you, counsel Bowles, for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue. The court will stand in brief recess for a panel change.